IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY LEE HARRIS,<br>AIS #233669,<br><br>   Petitioner,<br><br>v.<br><br>J. C. GILES, et al.,<br><br>   Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CASE NO. 1:08-CV-814-TMH
[WO]

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION AND PROCEDURAL HISTORY

This cause is before the court on a 28 U.S.C. § 2254 petition for writ of habeas

corpus filed by Timothy Lee Harris ["Harris"], a state inmate, on October 3, 2008.[1]  In this

petition, Harris challenges a conviction for trafficking in marijuana imposed upon him by

the Circuit Court of Houston County, Alabama, on May 25, 2004.[2]

_____

[1] Although the Clerk stamped the petition received on October 7, 2008, the law is well settled that a pro se inmate's petition is deemed filed the date it is delivered to prison officials for mailing.  *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993).  The *in forma pauperis* application filed simultaneously with the instant petition indicates Harris held these documents in his possession on October 3, 2008.  *Application to Proceed In Forma Pauperis - Court Doc. No. 2* at 2.  In light of the foregoing and for purposes of the proceedings herein, the court considers October 3, 2008 as the date of filing.

[2] In October of 1999, a Houston County Grand Jury issued an indictment against Harris for one count of trafficking in marijuana in violation of *Ala. Code* § 13A-12-231(1).  *Respondents' Exhibit A (Part I - Trial Record) - Court Doc. No. 10-1* at 12-13.  The indictment charged that Harris "did while in Houston County, Alabama, knowingly manufacture, or bring into this state, or knowingly have in actual or constructive possession in excess of one kilo or 2.2 pounds ... of cannabis, a controlled substance, in violation of Section 13A-12-231 of the Code of Alabama...."  At the time of Harris' indictment, the relevant portion of this code section provided that "[a]ny person who knowingly

After a suppression hearing on the admissibility of marijuana obtained during a search of Harris' automobile, the trial court denied the motion to suppress and deemed the evidence admissible. *Respondents' Exhibit A (Part II - Trial Transcript) - Court Doc. No. 10-2* at 75-94 and *Respondents' Exhibit A (Part III - Trial Transcript) - Court Doc. No. 10-3* at 2-10. During the trial of this case, the State presented evidence that upon a search of Harris' automobile, officers of the Dothan Police Department seized three gallon-sized Ziploc bags which contained a green, leafy, plant material the officers believed was marijuana. *Respondents' Exhibit A (Part III - Trial Transcript) - Court Doc. No. 10-3* at 20. The officer in charge, Cpl. Carlton Ott, placed the bags containing the substance in an evidence bag marked with identifying information and secured the evidence in his patrol car. *Id*. Ott subsequently transported the plant material to the forensic lab for testing and transferred the evidence to Mark Crews, the director of the forensics lab in Dothan, Alabama, whom the parties stipulated to be an expert in forensic testing. *Id*. at 21. Crews analyzed a representative sample of the substance which revealed "[t]he plant material contained within this package is marijuana and it weighed ... basically 2.92 pounds." *Id*. at 44. Crews also testified he undertook "a visual [examination] of the entire amount" and

---

sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, in excess of one kilo or 2.2 pounds of any part of the plant of the genus Cannabis, whether growing or not, the seeds thereof, the resin extracted from any part of the plant, and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds, or resin including the completely defoliated mature stalks of the plant, fiber produced from the stalks, oil, or cake, or the completely sterilized samples of seeds of the plant which are incapable of germination is guilty of a felony, which felony shall be known as 'trafficking in cannabis.'"

"broke a block and took a sample from the middle to be sure it was plant material all the way through.  And, it was." *Id*. at 46-47.  Based on his chemical analysis and visual observation of the substance, Crews testified that although "[t]here could be possibly something in there that is not marijuana" all of the compressed plant material submitted to him for testing "was marijuana." *Id.* at 48.  Crews further testified his fifteen years of forensic experience encompassing "thousands of cases a year ... [and] [m]y experience with this package here, all of that material in there is marijuana; looks, odor and testing." *Id.* at 49.

The testimony relevant to the chain of custody demonstrated that Cpl. Ott maintained custody of the evidence until he transferred it to the custody of Mark Crews at the forensic lab where it remained in Crews' custody or control until its return to Cpl. Ott. *Id*. at 20-21.  Cpl. Ott then placed the substance in the evidence vault of the Dothan Police Department where it remained until retrieved by Ott for admission at Harris' trial.  Ott testified that the evidence introduced at trial was "in the same condition as it was" when he placed it in the evidence bag except for "the cuts made by the forensic lab" and the identifying labels placed on the bag by the lab. *Id*. at 21.  Crews testified that the evidence of the substance presented by the State at trial "is what [I] received from Investigator Ott.... I recognize it by the laboratory generated case number and also my initials and last name placed on the envelope.  [The evidence] [a]ppears to be in the same condition as when I

3

returned it to Corporal Ott, with the exception of the State's Exhibit markings being placed on the package." *Id*. at 44.

Based on the evidence presented at trial, a duly empaneled petit jury found Harris guilty of trafficking in marijuana. The trial court sentenced Harris as a habitual felony offender to life imprisonment for this conviction.[3]

Harris filed a direct appeal of his trafficking conviction in which he argued that the trial court erred in denying his motion to suppress the marijuana obtained during a warrantless search of his vehicle. *Respondents' Exhibit B - Court Doc. No. 10-4 at 7.*[4] In support of this claim, Harris alleged that law enforcement officers illegally searched his vehicle because the officers lacked probable cause to search the vehicle and the vehicle was not parked on public property at the time of the challenged search. *Id*. at 18-20. On February 3, 2006, the Alabama Court of Criminal Appeals affirmed Harris' conviction for trafficking in marijuana. *Harris v. State of Alabama*, 948 So.2d 583 (Ala.Cr.App. 2006); *Respondents' Exhibit C - Court Doc. No. 10-5*. The appellate court's opinion, in relevant part, reads as follows:

> The evidence adduced at the suppression hearing and at trial indicated the following. Carlton Ott, a corporal with the Dothan Police Department assigned to the vice-intelligence division, testified that on August 19, 1999, he received information from a confidential informant, who had provided

---

[3]Eric Davis represented Harris at trial and sentencing.

[4]Richard Klemm represented Harris during the direct appeal of his conviction for trafficking in marijuana.

reliable information in the past, that Harris was in possession of a large amount of marijuana at his residence at 2401 Brown Street. The informant said that he had seen Harris in possession of the marijuana within the last few hours; that the marijuana was located in Harris's white Plymouth Laser automobile, which was parked outside the residence; and that a second automobile, a white Mazda 929, was also parked outside the residence. That evening, approximately six hours after receiving the information from the informant, Cpl. Ott and Mark Nelms, a sergeant in the vice-intelligence division of the Dothan Police Department, set up surveillance at Harris's residence, a mobile home, to corroborate the information received from the informant. They saw both vehicles described by the informant parked in the front yard of the mobile home.

Cpl. Ott testified that at approximately 10:10 p.m. they saw Harris leave the mobile home and get in the Plymouth Laser. According to Cpl. Ott, Harris sat in the vehicle for a few minutes until a black female drove up in a maroon Hyundai Sonata automobile and parked on the street in front of the residence. At that point, Cpl. Ott said, Harris got out of the Plymouth Laser and got into the Hyundai Sonata; Harris and the driver of the Sonata sat in the vehicle for a few minutes and then drove away. Cpl. Ott then radioed two backup officers and told them to stop the Sonata. Cpl. Ott said that he saw no bulges in Harris's clothing when he got out of the Laser and into the Sonata; that he had no information on the driver of the Sonata; and that no arrests were made during the stop. According to Cpl. Ott, no more than three minutes after the stop was completed, the Sonata returned to Harris's residence, Harris got out of the Sonata and got in the Laser, and then drove the Laser toward the back of the mobile home. At that point, Cpl. Ott said, they decided to "move in" because "[i]t was obvious ... that criminal activity was taking place."

Cpl. Ott and Sgt. Nelms, as well as the officers who had stopped the Sonata, entered the premises and met Harris as he was walking around from the back to the front of the mobile home. They detained Harris and conducted a *Terry* [*v. Ohio*, 392 U.S. 1 (1968)] patdown of his person. Cpl. Ott testified that Harris told him that his mother was inside the residence, and Cpl. Ott then knocked on the front door. According to Cpl. Ott, he informed Harris's mother that he had information that Harris was in possession of marijuana, and Harris's mother gave him permission to search her mobile home. Cpl. Ott testified that Harris did not appear nervous about the search of the mobile home. However, shortly after detaining Harris, Cpl. Ott called for a K-9 unit

to come to the residence so that a drug-sniffing dog could sniff the Laser. When Harris heard that Cpl. Ott had called for a K-9 unit, Cpl. Ott said, Harris became nervous and began calling for his mother. Cpl. Ott then asked Harris for the key to the Laser, and Harris handed him a key. However, Cpl. Ott recognized that the key Harris gave him was not a Chrysler-product key and he then asked Harris if he was sure this was the key to the Laser. According to Cpl. Ott, Harris told him that the key fit the Mazda 929 and that he did not have a key to the Laser. Cpl. Ott testified that the officer who had conducted the patdown of Harris told him that Harris had another key ring in the pocket of his shorts and Cpl. Ott then reached in Harris's pocket and retrieved the key to the Laser.

Shortly after Cpl. Ott retrieved the key, the K-9 unit arrived, and the K-9 officer walked his dog around the Laser; the dog alerted to the presence of narcotics at the rear of the vehicle. At that point, Cpl. Ott used the key to open the vehicle and discovered in the rear hatchback portion of the vehicle three one-gallon Ziploc brand plastic bags that were later determined to contain 2.92 pounds of marijuana. In addition, a large amount of currency was found in the center console, various papers with Harris's name on them were found in the glove compartment, and the registration indicated that the vehicle was registered to "Tim or Patricia Harris."

### Standard of Review

"When an appellate court reviews the findings and holdings of a trial court resulting from a hearing on a motion to suppress evidence, if the evidence before the trial court was undisputed, the 'ore tenus rule,' pursuant to which the trial court's conclusions on issues of fact are presumed correct, is inapplicable, and the reviewing court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court's application of the law to those facts."

*Ex parte Kelley*, 870 So.2d 711, 714 (Ala.2003). Here, the evidence was undisputed; the only issue is whether the trial court properly applied the law regarding probable cause and the automobile exception to the warrant requirement to the undisputed facts. Therefore, we review de novo the trial court's denial of Harris's motion to suppress.

### Probable Cause

"A warrantless search of a vehicle is justified where there is probable cause to believe the vehicle contains contraband." Lykes v. State, 709 So.2d 1335, 1337 (Ala.Crim.App.1997).

"'Probable cause exists where all the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and that contraband would be found in the place to be searched.' *Sheridan v. State*, 591 So.2d 129, 130 (Ala.Cr.App.1991). 'The requisite probable cause is present "if a reasonably prudent person, based on the facts and circumstances which the officer knows, would be justified in concluding that the items sought are connected with criminal activity and that they will be found in the place to be searched. Illinois v. Gates, 462 U.S. 213 [103 S.Ct. 2317, 76 L.Ed.2d 527] ... (1983)."' Day v. State, 539 So.2d 410, 413-14 (Ala.Cr.App.1988). '"The test for probable cause is 'whether the facts available to the officer at the moment of the seizure or search, would warrant a man of reasonable caution to believe that the action taken was appropriate.'"' *Ivey v. State*, 698 So.2d 179, 185-86 (Ala.Cr.App.1995), aff'd, 698 So.2d 187 (Ala.1997) (quoting *Riley v. State*, 583 So.2d 1353, 1355 (Ala.Cr.App.1991))."

*Johnson v. State*, 719 So.2d 272, 273 (Ala.Crim.App.1998). "Probable cause to search a vehicle exists when all the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and the vehicle contains contraband." *State v. Odom*, 872 So.2d 887, 891 (Ala.Crim.App.2003). *See also State v. Ivey*, 709 So.2d 502, 505 (Ala.Crim.App.1997) ("Probable cause to believe a vehicle contains contraband exists where all the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and that a search of the vehicle would produce contraband.").

"'Probable cause is concerned with "probabilities," that "are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act."'" *Chevere v. State*, 607 So.2d 361, 368 (Ala.Crim.App.1992), quoting *Carter v. State*, 435 So.2d 137, 139 (Ala.Crim.App.1982), quoting in turn *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

"'Probable cause does not require an officer to compile an airtight case against a suspect.' *Williams v. State*, 440 So.2d

7

1139, 1145 (Ala.Cr.App.1983). 'It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief" that certain items may be contraband ... it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required.' *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (citations omitted)."

*Mewbourn v. State*, 570 So.2d 805, 808-09 (Ala.Crim.App.1990). """"[P]robable cause does not require certainty of criminal activity, but only probability.... First-hand observations of criminal activity by a reliable informant in conjunction with police corroboration of factual details provides just this probability.""" *Harrelson v. State*, 897 So.2d 1237, 1241 (Ala.Crim.App.2004), quoting *McBride v. State*, 492 So.2d 654, 658 (Ala.Crim.App.1986), quoting in turn *United States v. Thompson*, 751 F.2d 300, 302 (8th Cir.1985).

Initially, we note that on appeal Harris confines his probable-cause argument to those circumstances that occurred before the officers' entry onto his premises. However, he does not challenge on appeal the officers' entry onto his premises, the *Terry* patdown of his person, the search of his pocket to obtain the key to the Laser, or the use of the drug-sniffing dog. Therefore, he has waived any inquiry into the propriety of those actions, and this Court, in determining whether probable cause existed, can and will consider all of the circumstances within the officers' knowledge at the time of the search, including those circumstances that occurred after the officers' entry onto Harris's premises.

Considering the totality of the circumstances, we conclude that there clearly was probable cause to search Harris's vehicle. Within a few hours of receiving information from a reliable confidential informant that Harris was in possession of a large amount of marijuana, which was located in his white Plymouth Laser automobile at his residence, Cpl. Ott and Sgt. Nelms conducted surveillance at Harris's residence and confirmed that both vehicles the informant had described as being at the residence were, in fact, parked in front of the residence. During their surveillance, Cpl. Ott and Sgt. Nelms saw Harris come out of his residence, sit in the Laser for a few minutes, and then leave in a Hyundai Sonata that had arrived at the residence. Although a stop of the Sonata did not result in any arrests, within three minutes after

the stop, Harris returned and pulled the Laser around the back of his residence. When the officers first approached Harris on his premises and obtained consent from his mother to search the residence, Harris did not appear nervous; however, when Harris discovered that a K-9 unit had been called to sniff the Laser, he became nervous and began calling for his mother. In addition, when asked for the key to the Laser, Harris gave the officers the key to the other vehicle parked at the residence and claimed that he did not have a key to the Laser. Harris, however, had just driven the Laser from the front to the back of the mobile home and the key to the Laser was discovered in Harris's pocket. Finally, when the drug-sniffing dog arrived at the scene and circled the vehicle, it alerted near the rear of the vehicle. These circumstances would warrant a person of reasonable caution to conclude that the Laser contained contraband. Therefore, there was probable cause to search the vehicle.

### Automobile Exception

In *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), the United States Supreme Court explained the automobile exception to the warrant requirement as follows:

> "The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' This fundamental right is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer. There are, of course, exceptions to the general rule that a warrant must be secured before a search is undertaken; one is the so-called 'automobile exception' at issue in this case. This exception to the warrant requirement was first set forth by the Court 60 years ago in *Carroll v. United States*, 267 U.S. 132 (1925). There, the Court recognized that the privacy interests in an automobile are constitutionally protected; however, it held that the ready mobility of the automobile justifies a lesser degree of protection of those interests. The Court rested this exception on a long-recognized distinction between stationary structures and vehicles:
>
> > "'[T]he guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of Government, as recognizing a

9

necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be ***quickly moved*** out of the locality or jurisdiction in which the warrant must be sought.' *Id.*, at 153 (emphasis added).

"The capacity to be 'quickly moved' was clearly the basis of the holding in *Carroll*, and our cases have consistently recognized ready mobility as one of the principal bases of the automobile exception. *See, e.g., Cooper v. California*, 386 U.S. 58, 59 (1967); *Chambers v. Maroney*, 399 U.S. 42, 52 (1970); *Cady v. Dombrowski*, 413 U.S. 433, 442 (1973); *Cardwell v. Lewis*, 417 U.S. 583, 588 (1974); *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976). In *Chambers*, for example, commenting on the rationale for the vehicle exception, we noted that 'the opportunity to search is fleeting since a car is readily movable.' 399 U.S., at 51. More recently, in United *States v. Ross*, 456 U.S. 798, 806 (1982), we once again emphasized that 'an immediate intrusion is necessary' because of 'the nature of an automobile in transit....' The mobility of automobiles, we have observed, 'creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible.' *South Dakota v. Opperman*, *supra*, at 367.

"However, although ready mobility alone was perhaps the original justification for the vehicle exception, our later cases have made clear that ready mobility is not the only basis for the exception. The reasons for the vehicle exception, we have said, are twofold. 428 U.S., at 367. 'Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office.' *Ibid*.

"Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting

from its use as a readily mobile vehicle justified application of the vehicular exception. *See, e.g., Cady v. Dombrowski*, *supra*. In some cases, the configuration of the vehicle contributed to the lower expectations of privacy; for example, we held in *Cardwell v. Lewis*, *supra*, at 590, that, because the passenger compartment of a standard automobile is relatively open to plain view, there are lesser expectations of privacy. But even when enclosed 'repository' areas have been involved, we have concluded that the lesser expectations of privacy warrant application of the exception. We have applied the exception in the context of a locked car trunk, *Cady v. Dombrowski*, supra, a sealed package in a car trunk, *Ross, supra*, a closed compartment under the dashboard, *Chambers v. Maroney*, *supra*, the interior of a vehicle's upholstery, *Carroll*, *supra*, or sealed packages inside a covered pickup truck, *United States v. Johns*, 469 U.S. 478 (1985).

"These reduced expectations of privacy derive not from the fact that the area to be searched is in plain view, but from the pervasive regulation of vehicles capable of traveling on the public highways. *Cady v. Dombrowski*, *supra*, at 440-441. As we explained in *South Dakota v. Opperman*, an inventory search case:

"'Automobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements. As an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order.' 428 U.S., at 368.

"The public is fully aware that it is accorded less privacy in its automobiles because of this compelling governmental need for regulation. Historically, 'individuals always [have] been on notice that movable vessels may be stopped and searched on facts giving rise to probable cause that the vehicle contains contraband, without the protection afforded by a magistrate's

prior evaluation of those facts.' *Ross*, *supra*, at 806, n. 8. In short, the pervasive schemes of regulation, which necessarily lead to reduced expectations of privacy, and the exigencies attendant to ready mobility justify searches without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met.

"When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes-temporary or otherwise-the two justifications for the vehicle exception come into play. First, the vehicle is obviously readily mobile by the turn of an ignition key, if not actually moving. Second, there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling. At least in these circumstances, the overriding societal interests in effective law enforcement justify an immediate search before the vehicle and its occupants become unavailable."

471 U.S. at 390-93, 105 S.Ct. 2066 (footnote omitted). No additional exigent circumstances are required for the warrantless search of a vehicle; probable cause alone is sufficient to bring a search within the automobile exception. *See Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996), wherein the United States Supreme Court upheld the warrantless search of a vehicle parked in the driveway of a farmhouse, and stated that "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *See also Maryland v. Dyson*, 527 U.S. 465, 466-67, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999), wherein the United States Supreme Court, reaffirming its holding in *Labron*, stated:

"The Fourth Amendment generally requires police to secure a warrant before conducting a search. *California v. Carney*, 471 U.S. 386, 390-391 (1985). As we recognized nearly 75 years ago in *Carroll v. United States*, 267 U.S. 132, 153 (1925), there is an exception to this requirement for searches of vehicles. And under our established precedent, the 'automobile exception' has no separate exigency requirement. We made this clear in *United States v. Ross*, 456 U.S. 798, 809 (1982), when we said that in cases where there was probable

cause to search a vehicle 'a search is not unreasonable if based on facts that would justify the issuance of a warrant, ***even though a warrant has not been actually obtained***.' (Emphasis added.) In a case with virtually identical facts to this one (even down to the bag of cocaine in the trunk of the car), *Pennsylvania v. Labron*, 518 U.S. 938 (1996) (per curiam), we repeated that the automobile exception does not have a separate exigency requirement: 'If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more.' *Id*., at 940.

"In this case, the Court of Special Appeals found that there was 'abundant probable cause' that the car contained contraband. This finding alone satisfies the automobile exception to the Fourth Amendment's warrant requirement, a conclusion correctly reached by the trial court when it denied respondent's motion to suppress. The holding of the Court of Special Appeals that the 'automobile exception' requires a separate finding of exigency in addition to a finding of probable cause is squarely contrary to our holdings in *Ross* and *Labron*. We therefore grant the petition for writ of certiorari and reverse the judgment of the Court of Special Appeals."

In arguing that the automobile exception to the warrant requirement does not apply to a vehicle parked on private property, Harris principally relies on the last paragraph in *Carney* quoted above, specifically, the following statement: "When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes-temporary or otherwise-the two justifications for the vehicle exception come into play." 471 U.S. at 392-93, 105 S.Ct. 2066 (footnote omitted; emphasis added). However, Harris's reliance on this single sentence is misplaced.

As the South Carolina Supreme Court explained in *State v. Cox*, 290 S.C. 489, 351 S.E.2d 570 (1986) [upon reviewing and reversing a plurality opinion of its Court of Appeals interpreting the last paragraph in *Carney* to mean that the automobile exception does not apply to any vehicle parked at a residence]:

"....   However, *Carney* dealt with a motor home, or camper vehicle. Even though the language cited above may appear to

13

apply to *all* motor vehicles, a close reading, in context, makes it clear that the Court was addressing only the inapplicability of the exception as to motor homes set up on a site and used as a residence. In the same paragraph from which the above sentence is cited, the *Carney* Court states 'there is a reduced expectation of privacy stemming from ***its*** use as a licensed motor vehicle subject to a range of police regulations inapplicable to a fixed dwelling.' [Emphasis supplied]. 471 U.S. at 393, 105 S.Ct. at 2070, 85 L.Ed.2d at 414. The emphasized pronoun 'its' in this sentence clearly refers to a motor home.

"No prior Supreme Court cases have recognized a distinction between vehicles parked in public and private places. Indeed, such a distinction would not harmonize with the Court's reasoning in automobile search cases.

"The *Carney* Court makes clear that under the automobile exception, probable cause alone is sufficient to justify a warrantless search. As the Court stated, 'the pervasive schemes of regulation, which necessarily lead to reduced expectations of privacy, and ***the exigencies attendant to ready mobility justify*** searches [of vehicles] without prior recourse to the authority of a magistrate so long as the ***overriding standard of probable cause is met***.' [Emphasis supplied]. 471 U.S. at 392, 105 S.Ct. at 2070, 85 L.Ed.2d at 414. That is, the inherent mobility of automobiles provides the requisite exigency."

290 S.C. at 491-92, 351 S.E.2d at 571-72. We agree. *Carney* involved the warrantless search of a motor home, readily capable of use either as a home or as a vehicle. In upholding the warrantless search under the automobile exception to the warrant requirement, the United States Supreme Court relied in part on the location of the motor home-in a parking lot in downtown San Diego-in concluding that the motor home was "so situated that an objective observer would conclude that it was being used not as a residence, but as a vehicle." *Carney*, 471 U.S. at 393, 105 S.Ct. 2066. Indeed, the Court pointed out that it "need not pass on the application of the vehicle exception to a motor home that is situated in a way or place that objectively indicates that it is being used as a residence." 471 U.S. at 394 n. 3, 105 S.Ct. 2066. Thus, the Court's statement in *Carney* that the automobile exception applies when

14

a vehicle is found "in a place not regularly used for residential purposes," 471 U.S. at 392, 105 S.Ct. 2066, was a reference to the limitation of the automobile exception to motor homes (or other objects that are equally capable of use as either a home or a vehicle) that are situated in such a place and in such a manner as to indicate their use as vehicles rather than homes.

Other [state and federal] courts have similarly construed this language in *Carney*....

\*\*\*

There appears to be a consensus among other jurisdictions that the language in *Carney* does not indicate a per se rule precluding application of the automobile exception to vehicles parked on private property, but there also appears to be a split among jurisdictions as to whether *Carney* requires the presence of exigent circumstances, beyond the ready mobility of vehicles, before the automobile exception is applicable to a vehicle parked on private property. [A split which predominately occurred prior to the United States Supreme Court's specific disavowance of any separate exigency requirement for the automobile exception in *Dyson* and *Labron*, *supra*.]

\*\*\*

We agree with those jurisdictions ... that have held that the automobile exception applies to vehicles located on private property without any additional exigency requirement. This view appears to be more in line with the underlying rationales for the automobile exception--the ready mobility and pervasive regulation of vehicles--and with the more recent pronouncements on the exception by the United States Supreme Court. The location of the vehicle does not change the inherent mobility and regulation of a vehicle. And in *Labron*, *supra*, the United States Supreme Court reversed the Pennsylvania Supreme Court's holding that the warrantless search of a vehicle parked in the driveway of a farmhouse was invalid under the automobile exception to the warrant requirement absent additional exigent circumstances on the ground that the holding "rest[ed] on an incorrect reading of the automobile exception to the Fourth Amendment's warrant requirement." 518 U.S. at 939, 116 S.Ct. 2485. Although the location of the vehicle does not appear to have been a specific issue in the case, it is nevertheless instructive that the Supreme Court held that the search was valid based on probable cause alone and absent any additional exigent circumstances. Therefore, to the extent that [prior Alabama cases] imply that the automobile exception to the warrant requirement does not apply to vehicles parked on private property without any additional exigent

circumstances, they are hereby overruled.

### Conclusion

In this case, there was probable cause to search Harris's vehicle, and the search of the vehicle was valid under the automobile exception to the warrant requirement without more. Therefore, the trial court properly denied Harris's motion to suppress.

Based on the foregoing, the judgment of the trial court is affirmed.

*Harris*, 948 So.2d at 585-597 (citations to record omitted).

Harris filed an application for rehearing which the Alabama Court of Criminal Appeals denied on April 14, 2006. Harris then filed a petition for writ of certiorari with the Alabama Supreme Court. The Alabama Supreme Court denied the petition for writ of certiorari on August 11, 2006 and the certificate of judgment issued on this same date. *Respondents' Exhibit D - Court Doc. No. 10-6.*

In January of 2007, Harris filed a *pro se* state post-conviction petition pursuant to Rule 32 of the Alabama Rules of Criminal Procedure with the Circuit Court of Houston County, Alabama in which he alleged: (1) Trial counsel failed to properly object and/or preserve for review "the issue that the state failed to prove a prima facie case of trafficking in marijuana ... because the toxicologist testified that the marijuana he weighed contained stems and seeds [which] he did not test ... to determine if they were sterilized or infertile ... thus failing to prove the stems, seeds and plant material contained marijuana [as required under prior statutory and case law and, therefore, failed to establish that] the quantity of marijuana found within the [three bricks of seized matter] weighed 2.2 pounds"

16

as necessary to establish trafficking in marijuana.  *Respondents' Exhibit E (Harris' Rule 32 Petition) - Court Doc. No. 10-7* at 16-19;[5] (2) Appellate counsel rendered ineffective assistance when he failed to include on direct appeal the issue of ineffective assistance of trial counsel with respect to counsel's failure to challenge the sufficiency of the evidence. *Id*. at 19; (3) The State failed to prove Harris was in possession of 2.2 pounds of marijuana, exclusive of sterilized/infertile seeds and non-marijuana plant material; *Id*. at 20-21; (4) Trial counsel failed to "properly and specifically object and/or preserve for review that the State illegally detained petitioner without *Miranda* warnings and illegally seized Petitioner['s] car keys.... [T]he officer exceeded his constitutional authority when he seized Petitioner's car keys because he did not have a search warrant and ... the keys were not immediately recognized as evidence of any crime."  *Respondents' Exhibit E (Amendment to Rule 32 Petition) - Court Doc. No. 10-7* at 39-40; (5) The seizure of his car keys without a warrant violated the Fourth Amendment and rendered all of the marijuana evidence obtained thereafter inadmissible.  *Id*. at 40, 44; (6) Petitioner's "nervousness during the encounter with the officers" cannot, standing alone, establish reasonable suspicion of criminal activity and his continued detention based on this factor "violated the petitioner's

---

[5] Each time Harris challenges the sufficiency of the evidence presented by the State regarding the composition of the seized substance, he relies on the definition of cannabis used under *Ala. Code* § 20-2-2(15) and applicable to *Ala. Code* § 13A-12-231(1) prior to the amendment of *Ala. Code* § 13A-12-231(1) in 1995.  The cases cited by Harris in support of this claim also address the previous and now inapplicable definition of cannabis in finding the State failed to prove a prima facie case of trafficking in cannabis.  As previously noted, *infra* at n.2, the definition of cannabis contained in *Ala. Code* § 13A-12-231(1) at the time of the petitioner's indictment and, therefore, the definition relevant in determining the sufficiency of the evidence presented at Harris' trial does ***not*** exclude seeds, stems or sterilized seeds from the definition of cannabis.

17

Fourth Amendment rights [requiring exclusion] of all evidence as the fruit of a unconstitutional search and illegal detention of the petitioner." *Id*. at 41; (7) The petitioner "was denied equal protection of the law [and deprived of due process] by not being tried by a cross section of his community, 'African Americans' at this trial. Petitioner contends blacks 'African Americans' are underrepresented in the jury pools of potential jurors in ... Houston County...." *Id*. at 44-45; (8) A new trial is warranted because "the Alabama Department of Forensic Science has falsely mislead the juries, Courts, and the public to believe that the method and principles used in analyzing forensic evidence is performed under reliable techniques.... Petitioner contends that Alabama Department of Forensic Science was so particularly and critically deficient that it undermined the reliability of the technique used and evidence should have been excluded from Petitioner's trial." *Id*. at 45, 47; and (9) The trial court erred in admitting evidence "of the drugs" as the State failed to "establish[] a proper chain of custody" regarding this evidence. *Id*. at 49.

On March 30, 2007, the trial court conducted a hearing on the Rule 32 petition. After hearing testimony and arguments from Harris and the State, the court issued an order denying Harris relief on the claims raised in his Rule 32 petition. *Respondents' Exhibit E - Court Doc. No. 10-7* at 52. Harris appealed the denial of his Rule 32 petition, arguing that: (1) His constitutional rights were violated by the warrantless seizure of his car keys while detained without provision of his *Miranda* rights; (2) Trial counsel provided ineffective

assistance when he failed to challenge the State's failure to establish a prima facie case of trafficking in marijuana; (3) Appellate counsel rendered ineffective assistance for his failure to raise a claim of ineffective assistance of counsel with respect to trial counsel's failure to challenge the sufficiency of the evidence; (4) The Constitution requires a new trial based on erroneous admission of evidence tested by the Alabama Department of Forensic Sciences as its laboratories were not accredited by a national organization at the time of his trial and the methods of testing employed were invalid rendering the evidence inadmissible at trial; and (5) The trial court erred in admitting evidence of the items seized because the State did not establish a proper chain of custody for this evidence. The Alabama Court of Criminal Appeals issued a memorandum opinion on December 14, 2007, affirming the trial court's decision to deny post-conviction relief. *Respondents' Exhibit J - Court Doc. No. 10-12*. The portion of this opinion relevant to the instant case reads as follows:

> Claim 1 is precluded because the appellant could have raised it at trial and on direct appeal. *See* Rule 32.2(a)(3) and (5), Ala. R. Crim. P.
>
> With regard to Claim 2, to prevail on an ineffective-assistance-of-counsel claim, the appellant must show that his counsel's performance was deficient and that counsel's deficient performance prejudiced him. *See Brown v. State*, 663 So.2d 1028 (Ala.Crim.App. 1995) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The appellant made bare allegations as to this claim, but he did not support them with facts or evidence. Therefore, he did not satisfy his burden of pleading and proof pursuant to Rules 32.3 and 32.6(b), Ala. R. Crim. P., as to this claim.
>
> With regard to Claim 3, the appellant was sentenced on November 12,

2004. However, the record on appeal was not certified as complete until April 22, 2005.

> "[I]n any cases in which the defendant is convicted after the date this opinion is released, an ineffective-assistance-of-counsel claim must be presented in a new trial motion filed before the 30-day jurisdictional time limit set by Rule 24.1(b), Ala. R. Crim. P., expires, in order for that claim to be properly preserved for review upon direct appeal.
>
> "...
>
> "When a defendant makes a claim of ineffective assistance of trial counsel, and that claim cannot reasonably be presented in a new trial motion filed within the 30 days allowed by Rule 24.1(b), Ala. R. Crim. P., the proper method for presenting that claim for appellate review is to file a Rule 32, Ala. R. Crim. P., petition for post-conviction relief."

*Ex parte Ingram*, 675 So.2d 863, 865-66 (Ala. 1996). In this case, appellate counsel did not have access to the record on appeal in time to raise ineffective-assistance-of-trial-counsel claims within 30 days after the appellant was sentenced. Therefore, appellate counsel did not render ineffective assistance in this regard.

With regard to Claim 4, to establish a claim based on newly discovered evidence, the appellant must show that

> "[t]he facts relied upon were not known by the petitioner or the petitioner's counsel at the time of trial or sentencing or in time to file a posttrial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence."

Rule 32.1(e)(1), Ala. R. Crim. P. The appellant has not shown that neither he nor his trial counsel knew that the Alabama Department of Forensic Sciences was not certified at any of these times or that they could not have discovered this information by these times through the exercise of reasonable diligence. Therefore, he has not satisfied his burden of pleading and proof pursuant to Rules 32.3 and 32.6(b), Ala. R. Crim. P., as to this claim.

Finally, with regard to Claim 5, the appellant's claim consists of bare allegations that he did not adequately support. Therefore, he did not satisfy his burden of pleading and proof pursuant to Rules 32.3 and 32.6(b), Ala. R. Crim. P.

Because the appellant's claims were precluded or not sufficiently pled and proven, the circuit court properly denied his petition. *See* Rule 32.7(d), Ala. R. Crim. P. Accordingly, we affirm the circuit court's judgment.

*Respondent's Exhibit J - Court Doc. No. 10-12* at 2-4. Harris filed a petition for writ of

certiorari which the Alabama Supreme Court denied on September 12, 2008. *Respondent's*

*Exhibit K - Court Doc. No. 10-13.*

Harris initiated this 28 U.S.C. § 2254 action on October 3, 2008. In this habeas

petition, Harris asserts the following claims for relief:

1. Conviction obtained by evidence gained pursuant to an unconstitutional search and seizure. The police conducted a pat down of the petitioner without any probable cause. A key to the car in which the contraband was found was taken from the pocket of the petitioner without a warrant or probable cause.

2. The evidence, i.e., marijuana, used for an arrest and subsequent conviction was illegally obtained absent either an arrest or search warrant because law enforcement officers conducted the search based on mere suspicion of the officers and a tip received from a confidential informant.

3. Trial counsel provided ineffective assistance when: (i) counsel failed to argue in the motion for judgment of acquittal that (a) the State did not present sufficient evidence proving the drugs seized from his automobile, after extraction of stems, seeds and infertile seeds, weighed more than 2.2 pounds so as to constitute trafficking in marijuana, and (b) the State failed to prove all of the seized substance constituted marijuana, and

21

(ii) counsel denied the petitioner his right to testify at trial.

4.  Appellate counsel provided ineffective assistance when he failed to present a claim of ineffective assistance of trial counsel with respect to the failure to challenge the sufficiency of the evidence presented at trial.

*Petition for Writ of Habeas Corpus - Court Doc. No. 1* at 5-6.

In their answer to the petition, the respondents argue the claims pending before this court entitle Harris to no relief.  Specifically, the respondents assert that the majority of Harris' claims for federal habeas relief are procedurally barred from review because Harris failed to present these claims to the state courts as required by the State's procedural rules either at trial, on direct appeal or in his Rule 32 petition.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732-1733 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including review by the state's court of last resort, even if review in that court is discretionary.); *Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003) ("Nothing in *Boerckel's* reasoning suggests that a different rule should apply in state post-conviction appeals as opposed to direct appeals."); *Smith v. Jones*, 256 F.3d 1135, 1140 (11th Cir. 2001), *cert. denied*, 534 U.S. 1136, 122 S.Ct. 1081, 151 L.Ed.2d 982 (2002) ("Alabama's discretionary direct review procedures bring Alabama prisoner habeas petitions within the scope of the *Boerckel* rule."); *Brownlee v.*

*Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002); *Holladay v. Haley*, 209 F.3d 1243, 1254 n. 9 (11th Cir.), *cert denied*, 531 U.S. 1017 (2000); *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999); *Atkins v. Singletary*, 965 F.2d 952, 955 (11th Cir. 1992); *Collier v. Jones*, 901 F.2d 770, 773 (11th Cir. 1990).  In order to provide the state courts with the requisite full and fair opportunity to address his claims, "the petitioner [must] 'fairly present' his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right.  *Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971)).  Exhaustion is not satisfied 'merely' if the petitioner presents the state court with 'all the facts necessary to support the claim' or even if a 'somewhat similar state-law claim was made.'  *Kelley v. Sec'y for Dept. of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (citation omitted)."  *Pearson v. Sec'y for Dept. of Corr.*, 273 Fed.Appx. 847, 849-850 (11th Cir. 2008).  As support for their procedural default argument, the respondents maintain that Harris' challenge to the pre-arrest pat down and his claim that trial counsel refused to allow him to testify are procedurally barred from review by this court because these claims have never been raised in the state courts.  The respondents further argue that Harris' allegation regarding removal of the car key from his pocket is procedurally defaulted as the last state court to address this issue deemed it defaulted due to the petitioner's failure to raise the claim on direct appeal.

23

With respect to those claims which Harris properly exhausted in the state courts –

i.e., the challenge to the constitutionality of the search of his automobile, his allegations

of ineffective assistance regarding trial counsel's failure to move for judgment of acquittal

based on the State's failure to prove (i) all of the seized material was marijuana and (ii) his

possession of in excess of 2.2 pounds of a substance statutorily defined as marijuana, and

his claim of ineffective assistance of appellate counsel – the respondents argue that Harris

is entitled to no relief from this court as the state courts properly adjudicated these claims

on the merits.  *Price v. Vincent*, 538 U.S. 634, 638, 123 S.Ct. 1848, 1852 (2003) ("A

habeas petitioner whose claim was adjudicated on the merits in state court is not entitled

to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d).");

*Williams v. Taylor*,529 U.S. 362, 402, 120 S.Ct. 1495, 1518 (2000).  Finally, it is clear to

the court that Harris' claim challenging the constitutionality of the search of his automobile

is also barred by the doctrine established in *Stone v. Powell*, 428 U.S. 465 (1976).  In

*Stone*, the Supreme Court held that where a state provides an opportunity for full and fair

litigation of a Fourth Amendment claim the Constitution does not require that a state

prisoner be granted federal habeas corpus relief on the ground that evidence obtained in

an unconstitutional search or seizure was introduced at his trial.  Thus, if the state courts

provided Harris an opportunity for full and fair litigation of this Fourth Amendment claim,

habeas corpus relief in this court may not be granted.

Upon review of the § 2254 petition, the answer of the respondents, Harris' response to the answer, the state court record, opinions issued by the state courts and applicable federal law, this court finds that no evidentiary hearing is required, Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*, and concludes that the petition is due to be denied.

## II.  DISCUSSION

### A.  Actual Innocence - Independent Claim

To the extent that Harris alleges he is actually innocent of first degree trafficking in marijuana, he is entitled to no relief.  The law is well settled "that '[c]laims of actual innocence ... have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.' *Herrera v. Collins,* 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993).  It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence [presented at trial or] that has emerged since trial. 'This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution--not to correct errors of fact.' *Id*." *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002).  In accordance with the foregoing, Harris is entitled to no relief from this court on any independent claim of actual innocence.

### B.  Adjudicated Claims

The instant petition for federal habeas relief is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ["AEDPA"].  "A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."  *Price*, 538 U.S. 634, 638, 123 S.Ct. 1848, 1852; *Williams*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518.  Under 28 U.S.C. § 2254(d), with respect to a claim adjudicated on the merits in state court, federal habeas relief from a state court judgment may not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams*, the Supreme Court held:

> Under the "contrary to" clause a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523.

The Court subsequently explained that habeas relief is appropriate when a petitioner

26

demonstrates "that a decision by a state court is 'contrary to' ... clearly established [Supreme Court] law if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000)." *Price*, 538 U.S. at 640, 123 S.Ct. at 1853. Additionally, federal review in a habeas action "is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law. *Williams*, [529 U.S. at 409],120 S.Ct. at 1521." *Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'"). Thus, a federal court is not to decide "the correctness *per se* ... of the state court decision" but only the "objective reasonableness" of such decision. *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001). Moreover, "an ***unreasonable*** application of federal law is different from an ***incorrect*** application of federal law." *Williams*, 529 U.S. at 410, 120 S.Ct. at 1522 (emphasis in original). "Under § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." 529 U.S. at 411, 120 S.Ct. at 1522.

Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)." *Price*, 538 U.S. at 639, 123 S.Ct. at 1852. The Supreme Court admonishes that such *de novo* evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)...." 538 U.S. at 636, 123 S.Ct. at 1851. As is clear from the foregoing, a federal "district court's review ... [of claims decided by the state courts] is greatly circumscribed and highly deferential to the state courts." *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2007). The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

    1.  <u>Search of Automobile and Seizure of Marijuana</u>.  The trial court held a

suppression hearing on Harris' motion to suppress, at which time Harris argued the warrantless search of the automobile violated his constitutional rights because the police officers did not have consent to search the car, they did not have probable cause to conduct the search, and the exigent circumstances/vehicle exception did not apply under the circumstances present in this case.  After hearing testimony regarding the search, the trial court found "first of all, the officer had probable cause.  And secondly, a vehicle was involved.  Thirdly, the vehicle was mobile, albeit behind a residence.  But, it had been moved just moments before [by Harris].  Fourthly, exigent circumstances apply to this case because of the very mobility of that automobile and the officers' lack of knowledge of who all had keys to the vehicle or could even see the vehicle at that time, although they did run into [Harris] when they moved in." *Respondents' Exhibit A (Part III - Trial Transcript) - Court Doc. No. 10-3* at 6-7.

On direct appeal, Harris argued the trial court erred in denying his motion to suppress the marijuana evidence found as a result of the warrantless search of his automobile as the search did not fall within the vehicle exception to the warrant requirement of the Fourth Amendment.  In support of this argument, Harris alleged that the officers lacked probable cause to search his automobile and the vehicle exception did not apply because the automobile was on private property.  The Alabama Court of Criminal Appeals determined these arguments adversely to Harris.  *Harris*, 948 So.2d at 588, 597

("Considering the totality of the circumstances, we conclude that there clearly was probable cause to search Harris's vehicle."   Relying on the decisions issued by the United States Supreme Court in *Dyson* and *Labron* disavowing any additional exigency requirement, other than the inherent mobility of a vehicle, as necessary to establish the automobile exception, the appellate court further held that the automobile exception to the warrant requirement applied to the search of Harris' car because this "applies to vehicles located on private property without any additional exigency requirement.").

The Alabama Court of Criminal Appeals did not decide Harris' claims challenging the search and seizure "differently than [the Supreme] Court has [in a case based] on a set a of materially indistinguishable facts" nor did the state courts apply a rule that contradicts governing federal law.  *Williams*, 529 U.S. at 413, 120 S.Ct. at 1523.  Consequently, the state appellate court's rejection of the claims related to the search of Harris' automobile and seizure of marijuana pursuant to this search was not contrary to actual Supreme Court decisions.  Further, a thorough review of the evidentiary materials submitted in this case establishes that the state court's decision was objectively reasonable and constituted a reasonable determination of the facts in light of the evidence presented by the parties.  Thus, Harris is not entitled to relief from this court on his challenges to the admission of evidence obtained pursuant to the challenged search and seizure.

In addition, the claims arising under the Fourth Amendment – i.e., lack of probable

cause and inapplicability of the automobile exception, challenging the search of Harris'

automobile which led to the seizure of marijuana from his automobile – are likewise

precluded from review by this court because Harris had a full and fair opportunity to

litigate such claims in the state courts. *Stone*, 428 U.S. at 494. "'[F]ull and fair

consideration' in the context of the Fourth Amendment includes 'at least one evidentiary

hearing in a trial court and the availability of meaningful appellate review when there are

facts in dispute, and full consideration by an appellate court when the facts are not in

dispute.' *Carver v. Alabama*, 577 F.2d 1188, 1191 (5th Cir. 1978)." *Bradley v. Nagle*, 212

F.3d 559, 565 (11th Cir. 2000), *cert. denied*, 531 U.S. 1128, 121 S.Ct. 886 (2001). During

the proceedings before the Circuit Court of Houston County, Harris, through counsel,

presented a motion to suppress challenging the search which resulted in the seizure of

marijuana from his automobile. The trial court conducted a hearing on this motion. Based

on the evidence presented at this hearing, the court denied the motion to suppress. On

direct appeal, Harris again challenged the constitutionality of the search of his automobile.

The Alabama Court of Criminal Appeals likewise denied Harris relief. *Harris*, 948 So.2d

at 585-597. In light of the foregoing, the court concludes the State afforded Harris an

opportunity for full and fair consideration of any Fourth Amendment claims challenging

the validity of the search through available state court proceedings. Consequently, this

claim is precluded from federal habeas review. *Stone*, 428 U.S. at 494; *Bradley*, 212 F.3d

at 564-565.

2. <u>Ineffective Assistance of Trial and Appellate Counsel</u>.  Harris maintains that trial counsel failed to properly challenge the prima facie case presented by the State regarding the actual amount of marijuana seized from his car.  In support of this claim, Harris alleges that trial counsel did not argue that the State (i) failed to present sufficient evidence which established that the entire substance seized from his car was marijuana, and (ii) failed to show that the amount of actual marijuana seized from his the car weighed at least 2.2 pounds.  Harris also contends appellate counsel rendered ineffective assistance for failing to raise a claim of ineffective assistance of trial counsel arising from counsel's alleged deficient attack on the sufficiency of the evidence.  On appeal from the trial court's denial of the Rule 32 petition, the Alabama Court of Criminal Appeals addressed Harris' claims of ineffective assistance of trial and appellate counsel regarding counsel's failure to challenge the prima facie case presented by the State.

In addressing the claim of ineffective assistance of trial counsel, the appellate court applied *Strickland v. Washington*, 466 U.S. 668 (1984), and determined that Harris failed to meet his burden of proof on this claim.  *Respondents' Exhibit J - Court Doc. No. 10-12* at 2.  *Strickland* sets forth the clearly established federal law on this issue.  With respect to Harris' claim of ineffective assistance of appellate counsel, the court decided this claim adversely to Harris on the merits.  *Id*. at 3 ("[A]ppellate counsel did not have access to the

32

record on appeal in time to raise ineffective-assistance-of-trial-counsel claims [in a motion

for new trial].... Therefore, appellate counsel did not render ineffective assistance in this

regard." Thus, this court will determine whether rejection of Harris' claims of ineffective

assistance of counsel by the state courts "resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States."). 28 U.S.C. § 2254(d)(1).

     The Sixth Amendment right to counsel exists to protect the fundamental right to a

fair trial. The petitioner must satisfy the requirements of a two-pronged test to prevail on

his claims of ineffective assistance of counsel. First, the petitioner must establish that the

performances of his attorneys "fell below an objective standard of reasonableness."

*Strickland* 466 U.S. at 688. "The proper measure of attorney performance remains simply

reasonableness under prevailing professional norms." *Id*. Once this threshold test is met,

the petitioner must then show that the deficient performance of his counsel prejudiced his

defense. *Id.* at 687. To establish prejudice, the petitioner is required to show that there is

"a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id.* at 694. Unreliability or unfairness does not

result if counsel's ineffectiveness does not deprive the defendant of any substantive or

procedural right to which the law entitles him. *Williams v. Taylor*, 529 U.S. at 393 n. 17

(2000). There is a strong presumption that counsel's performance was reasonable and

adequate and great deference is shown to choices dictated by reasonable trial strategy. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Any review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel based on facts "as they were known to counsel at the time of the representation." *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992).

The test used to evaluate claims of ineffective assistance of trial counsel applies equally to an analysis of claims of ineffective assistance of appellate counsel. *Jackson v. Dugger*, 931 F.2d 712, 715 (11th Cir. 1991). Appellate counsel cannot be deemed ineffective for failing to raise meritless claims on appeal. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

This court must first resolve whether the Alabama Court of Criminal Appeal's decision to reject the ineffective assistance of trial counsel claims was an unreasonable application of the *Strickland* standard.

> In determining whether the state court's decision is an unreasonable application of the law set out in [applicable] Supreme Court decisions, we need not decide whether we would have reached the same result as the state court if we had been deciding the issue in the first instance. Instead, we decide only whether the state court's decision of the issue is objectively unreasonably. *See Williams v. Taylor*, 529 U.S. 362, 411, 120 S.Ct. 1495, 1522, 146 L.Ed.2d 389 (2000)

> ("Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."); *Brown v. Head*, 272 F.3d 1308, [1313] (11th Cir. 2001)("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").

*Wright v. Secretary for the Dept. of Corrections*, 278 F.3d 1245, 1256 (11th Cir. 2002).

The Alabama Court of Criminal Appeals applied *Strickland* in its review of Harris' claims challenging the actions of trial counsel and determined Harris failed to establish counsel provided ineffective assistance. Upon thorough review of the evidentiary materials submitted in this case, it is clear that the rejection of Harris' ineffective assistance of trial counsel claims by the Alabama Court of Criminal Appeals was objectively reasonable as Harris failed to show that the performance of counsel fell below a subjective standard of reasonableness. The state court likewise did not decide Harris' claims of ineffective assistance of trial or appellate counsel "differently than [the Supreme] Court has [in a case based] on a set a of materially indistinguishable facts" nor did the state court apply a rule that contradicts governing federal law. *Williams*, 362 U.S. at 412. Consequently, the state appellate court's rejection of these claims was not contrary to actual Supreme Court decisions or an unreasonable application of clearly established federal law. In addition, the decisions issued by the Alabama Court of Criminal Appeals on each of Harris' claims of

ineffective assistance of trial and appellate counsel constituted a reasonable determination of the facts in light of the evidence presented by the parties. Habeas relief is therefore unwarranted on Harris' claims of ineffective assistance of trial and appellate counsel related to the failure of trial counsel to challenge the prima facie case presented by the State.[6]

### C. Procedural Default

The remaining claims for federal habeas relief raised in the instant petition are procedurally defaulted, as Harris failed to present these claims to the state courts in accordance with the State's applicable procedural rules. *O'Sullivan v. Boerckel*, 526 U.S. at 845; *Henderson*, 353 F.3d 880, 891 (11th Cir. 2003); *Pruitt v. Jones*, 348 F.3d at 1358-1359. The relevant procedural defaults are as follows:

(1)  The allegation trial counsel prevented Harris from testifying is procedurally defaulted because Harris did not raise this claim in his Rule 32 petition.

(2)  The claim challenging the pre-arrest pat down is procedurally defaulted as

---

[6]The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is to determine whether the evidence could reasonably support a finding of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979).

> But this inquiry does not require [this] court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." ... [I]nstead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id*. at 318-319 (emphasis in original; citations and footnote omitted).  The court has independently and thoroughly reviewed the evidence presented by the State in this case.  This evidence, when viewed in the light most favorable to the prosecution, provided a basis on which the jury could have found the petitioner guilty of trafficking in marijuana beyond a reasonable doubt.  Thus, the court concludes that Harris' claims to the contrary and those claims of ineffective assistance of counsel based on alleged insufficiency of the evidence are all likewise without merit.

Harris never presented this claim to the state courts.

(3)  The claim regarding removal of car keys from Harris' pocket is procedurally defaulted because the last state court to address the issue deemed it defaulted.  Specifically, on appeal from the denial of Harris' Rule 32 petition, the Alabama Court of Criminal Appeals found this claim "precluded because the appellant could have raised it at trial and on direct appeal." *Respondents' Exhibit J - Court Doc. No. 10-12* at 2; *Atkins v. Singletary*, 965 F.2d 952, 955 (11th Cir. 1992) (citations omitted) ("Federal review of a petitioner's claim is barred by the procedural-default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and that bar provides an adequate and independent state ground for denying relief.").

The respondents therefore argue that those claims presented by Harris in the instant section 2254 petition which Harris failed to raise at trial, on direct appeal and/or in his Rule 32 are procedurally barred from review by this court as Harris did not properly present and completely exhaust these claims in the state courts.

As a prerequisite to filing a federal habeas action, the petitioner must have properly exhausted state court remedies, either on direct appeal or in a state post-conviction petition, 28 U.S.C. § 2254(b), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor,* 404 U.S. 270, 275 (1971) (citation omitted)); *Kelley*,

377 F.3d at 1342-1344 (11th Cir. 2004) (a petitioner cannot raise claims in federal court if those claims, including the factual basis for the claims, were not first properly exhausted in state court.).  To exhaust state remedies in accordance with the exhaustion requirement, the petitioner must fairly present every issue raised in his federal petition to each appropriate state court, including the state's highest court, alerting that court to the federal nature of the claim and a statement of the facts which entitle him to relief.  *Duncan,* 513 U.S. at 365-366; *O'Sullivan,* 526 U.S. at 845; *Picard,* 404 U.S. at 277-278.  "[F]or purposes of exhausting state remedies, a claim for relief in a habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief."  *Gray v. Netherland*, 518 U.S. 152, 162-163, 116 S.Ct. 2074, 2081, 135 L.Ed.2d 457 (1996); *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) ("In order to be exhausted, a federal claim must be fairly presented to the state courts."); *Edwards v. Carpenter*, 529 U.S. 446, 452, 120 S.Ct. 1587, 1591-1592 (2000) (the exhaustion requirement is not satisfied when "the ineffective-assistance claim was 'presented' to the state courts [but] not presented in the manner that state law requires.").

> It is not sufficient merely that the federal habeas petitioner has been through the state courts, *Picard v. Connor,* 404 U.S. 270, 275-76, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made, *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (citations omitted).  The petitioner must present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts

bearing upon (his) constitutional claim." *Picard,* 404 U.S. at 277, 92 S.Ct. at 513 (alteration in original).

Thus, the prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, ***but also to the specific assertions of fact that might support relief. For example, habeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts.*** *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992). As we explained,

> allowing a habeas petitioner to allege a single instance of ineffective assistance in his state post-conviction proceedings and then proceed to federal court to allege additional instances would be contrary to the state's "full and fair opportunity to address the claim on the merits." The state would never have the benefit of evaluating the claim using a fully developed set of facts. This would not be the "serious and meaningful" exhaustion of claims that Congress intended.

*Id.*; *see also Carriger v. Lewis,* 971 F.2d 329, 333 (9th Cir. 1992) (en banc) (holding that, where the habeas petitioner properly raised only one ineffective assistance claim on collateral attack in state court, he could seek federal relief based on that specific claim, but not based on other alleged attorney defects that were not presented to the state courts); *Maynard v. Lockhart,* 981 F.2d 981, 984-85 & n. 1 (8th Cir. 1992) ("To preserve an allegation of ineffective assistance for federal habeas review, a petitioner must present that specific allegation to a state court."). Furthermore, habeas petitioners cannot preserve otherwise unexhausted, specific claims of ineffective assistance merely by arguing that their lawyers were ineffective in a general and unspecified way. *See Weeks [v. Jones]*, 26 F.3d [1030] at 1044-46 [(11th Cir. 1994)] (rejecting petitioner's argument that "the general claim of ineffective assistance in state court preserves for federal review all alleged instances of ineffectiveness, regardless of whether evidence of a particular act was presented to the state court"). In sum, to preserve a claim of ineffective assistance of counsel for federal review, the habeas petitioner must assert this theory of relief and transparently present the state courts with the specific acts or omissions of his lawyers that resulted in prejudice. In sum, to preserve a claim of ineffective assistance of counsel for federal review, the habeas petitioner must assert this theory of relief and transparently present the state courts with the specific acts or omissions of

his lawyers that resulted in prejudice.

*Kelley*, 377 F.3d at 1343-1344 (emphasis added).  The court further advised that "[t]o ensure exhaustion, petitioners must present their claims in this manner of clarity throughout 'one complete round of the State's established appellate review process.' *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999).  As long as state supreme court review of a prisoner's claims is part of a state's ordinary appellate review procedure, prisoners of that state must present their claims to the state supreme court to preserve those claims for federal review, even if review by that court is discretionary.  *See id*. at 848-49, 119 S.Ct. at 1734." *Kelley*, 377 F.3d at 1345.  In addition, the law is well settled that this court cannot consider the merits of a claim where "the last state court rendering judgment in the case clearly and expressly state[d] that its judgment rests on a state procedural bar." *Parker v. Secretary Dept. of Corrections*, 331 F.3d 764, 771 (11th Cir. 2003) (quotation marks and citation omitted).

Harris failed to properly exhaust his federal claims regarding denial of the right to testify and the pre-arrest pat down and seizure of the car key in the state courts, and no remedy remains before those courts with which Harris can obtain review of these claims.  These claims are therefore precluded from federal review.  This court may reach the merits of Harris' procedurally defaulted claims "only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both

40

'cause' for the default and actual 'prejudice' resulting from the default. *See Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); *[Wainwright v.] Sykes*, 433 U.S. [72,] 87 [(1977)].... Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. *Murray*, 477 U.S. at 495-96, 106 S.Ct. at 2678. A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent. *Id*." *Henderson*, 353 F.3d at 892.

### 1. Cause and Prejudice.

> "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper,* 169 F.3d 695, 703 (11th Cir.1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Id.*; *Crawford v. Head,* 311 F.3d 1288, 1327-28 (11th Cir.2002).

*Henderson*, 353 F.3d at 892. Harris argues that he had cause for the procedural default of his claim that trial counsel prevented him from testifying due to the novelty of this issue at the time he filed his Rule 32 petition. *Petitioner's Response - Court Doc. No. 15* at 3, 6. In support of this assertion of cause, Harris contends that he could not have raised this claim of ineffective assistance of counsel in his Rule 32 petition because at the time he filed the Rule 32 petition the state courts had not yet issued an opinion addressing the

viability of this specific issue. ("[I]n the case of *Reeves v. State*, 974 So 2d 314 (Ala.Crim.App.2007), which was released ... on May 25, 2007 [but not made available to the petitioner until after June 25, 2007,] the Alabama Court of Appeals ... held ... 'that the appellant's trial counsel rendered ineffective assistance by depriving him of his right to testify on his own behalf and that the deprivation was not harmless.... This case was released after Harris initially filed his Rule 32 petition and therefore that is the reason that Harris failed to allege the claim in the ... Rule 32 and this court failure to entertain the claim ... will be a flagrant miscarriage of justice...."). *Id*. at 3.

> It is true that "a claim that 'is so novel that its legal basis is not reasonably available to [the petitioner]' may constitute cause for a procedural default." *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (quoting *Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984)). However, "the question is not whether subsequent legal developments have made [the petitioner's] task easier, but whether at the time of the default the claim was 'available' at all." *Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *see also Waldrop v. Jones*, 77 F.3d 1308, 1315 (11th Cir. 1996) (stating that "a rule is 'novel,' and therefore cause for procedural default, only if the petitioner did not have the legal tools to construct the claim before the rule was issued.").

*McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001).

In *United States v. Teague*, 953 F.2d 1525, 1531 (11th Cir. 1992), Teague appealed the district court's denial of his 28 U.S.C. § 2255 motion in which he argued "he was prevented from testifying ... by his own lawyer." In addressing this attack on the action of trial counsel, the Eleventh Circuit acknowledged this issue provided a basis for post-

conviction relief and held "the appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance of counsel under *Strickland*...." *Teague*, 953 F.2d at 1534.  The Court then set forth the precise basis for this claim:  "Where the defendant claims a violation of his right to testify by defense counsel, the essence of the claim is that the action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify in his own behalf [which alleges a violation] ... of the first prong of the *Strckland* test.  For example, if defense counsel refused to accept the defendant's decision to testify and would not call him to the stand, counsel would have acted unethically to prevent the defendant from exercising his fundamental constitutional right to testify."  *Id*.  Thus, the legal foundation and factual basis underlying a claim that defense counsel provided ineffective assistance when he prevented his client from testifying were obviously in existence as early as issuance of the *Teague* decision. Teague himself raised the issue, which the Eleventh Circuit acknowledged and addressed, as did Stevens in his post-conviction proceedings before the Alabama courts.   Moreover, federal courts also addressed this claim of ineffective assistance of counsel in numerous decisions issued prior to Harris filing his Rule 32 petition in January of 2007.  *Cannon v. Mullin*, 383 F.3d 1152, 1171 (10th Cir. 2004); *United States v. Mullins*, 315 F.3d 449, 453-454 (5th Cir.2002); *United States v. Willis*, 273 F.3d 592, 598  (5th Cir. 2001); *Chang v. United States*, 250 F.3d 79 (2nd Cir. 2001); *Sayre*

43

*v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001); *Robison v. Johnson*, 151 F.3d 256, 262 (5th Cir. 1998); *United States v. Lore*, 26 F.Supp.2d 729 (D.N.J. 1998); *Emery v. Johnson*, 139 F.3d 191, 198-199 (5th Cir. 1997); *United States v. Garcia*, 762 F.2d 1222, 1226 (5th Cir. 1985); and *Hollenbeck v. Estelle*, 672 F.2d 451, 454 (5th Cir. 1982).

In light of the foregoing, the court concludes the legal elements of this claim of ineffective assistance of counsel were reasonably available and easily recognizable several years prior to the time Harris filed his Rule 32 petition. *McCoy*, 266 F.3d at 1259; *Waldrop*, 77 F.3d at 1315. Thus, Harris has not shown cause to excuse his procedural default of this claim. "Having determined that [Harris] cannot show cause for his failure, [this court] need not discuss whether he suffered 'actual prejudice' resulting from the error[] of which he complains." *McCoy*, 266 F.3d at 1259.

Harris also argues "that even though the claim concerning the Trial Counsel failure to allow him to testify was not presented to the state court ... [in] his Rule 32 petition ... [this issue is nevertheless preserved for federal review because] he alleged in his Rule 32 Petition that his [trial] counsel was ... ineffective on several other avenues...." *Petitioner's Response - Court Doc. No. 15* at 6. Applicable federal law forecloses this argument.

> ***...[H]abeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts***. *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992). As we explained,
>> allowing a habeas petitioner to allege a single instance of ineffective assistance in his state post-conviction proceedings

> and then proceed to federal court to allege additional instances
> would be contrary to the state's "full and fair opportunity to
> address the claim on the merits." The state would never have
> the benefit of evaluating the claim using a fully developed set
> of facts. This would not be the "serious and meaningful"
> exhaustion of claims that Congress intended.

*Id.*; *see also Carriger v. Lewis,* 971 F.2d 329, 333 (9th Cir. 1992) (en banc)
(holding that, where the habeas petitioner properly raised only one
ineffective assistance claim on collateral attack in state court, he could seek
federal relief based on that specific claim, but not based on other alleged
attorney defects that were not presented to the state courts); *Maynard v.
Lockhart,* 981 F.2d 981, 984-85 & n. 1 (8th Cir. 1992) ("To preserve an
allegation of ineffective assistance for federal habeas review, a petitioner
must present that specific allegation to a state court."). Furthermore, habeas
petitioners cannot preserve otherwise unexhausted, specific claims of
ineffective assistance merely by arguing that their lawyers were ineffective
in a general and unspecified way. *See Weeks [v. Jones]*, 26 F.3d [1030] at
1044-46 [(11th Cir. 1994)] (rejecting petitioner's argument that "the general
claim of ineffective assistance in state court preserves for federal review all
alleged instances of ineffectiveness, regardless of whether evidence of a
particular act was presented to the state court"). In sum, to preserve a claim
of ineffective assistance of counsel for federal review, the habeas petitioner
must assert this theory of relief and transparently present the state courts with
the specific acts or omissions of his lawyers that resulted in prejudice. In
sum, to preserve a claim of ineffective assistance of counsel for federal
review, the habeas petitioner must assert this theory of relief and
transparently present the state courts with the specific acts or omissions of
his lawyers that resulted in prejudice.

*Kelley*, 377 F.3d at 1343-1344 (emphasis added). Thus, Harris' presentation of "other"

ineffective assistance of counsel claims in the Rule 32 petition failed to preserve for federal

review the claim of ineffective assistance of trial counsel related to denying him the right

to testify. *Id*.

As previously determined, Harris failed to establish ineffective assistance of either

trial counsel regarding the failure to challenge the prima facie case presented by the State or appellate counsel with respect to his failure to raise on direct appeal the aforementioned claim of ineffective assistance of trial counsel.  Moreover, Harris is likewise procedurally defaulted on any claims of ineffective assistance of trial and appellate counsel he raises in his response as cause for the procedural defaults attendant to his pre-arrest pat down and key seizure claims because he failed to properly pursue and fairly present these claims in the state courts in available state proceedings.  *Day v. McDonough,* 547 U.S. 198, 206, 126 S.Ct. 1675, 1682, 164 L.Ed.2d 376 (2006) ("[T]he Courts of Appeals have unanimously held that, in appropriate circumstances, courts, on their own initiative, may raise a petitioner's procedural default, i.e., a petitioner's failure properly to present an alleged constitutional error in state court, and the consequent adequacy and independence of state-law grounds for the state-court judgment."); *see also Moon v. Head,* 285 F.3d 1301, 1315 n. 17 (11th Cir.2002).  Ineffective assistance of counsel will excuse a procedural default only when the ineffective assistance claim itself has been independently raised and properly exhausted in the state courts.  *Edwards*, 529 U.S. at 453, 120 S.Ct. at 1592 (A federal habeas court is barred from considering a procedurally defaulted "ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim" unless the petitioner establishes "the cause-and-prejudice standard with respect to [the ineffective assistance claim itself]."); *Murray*, 477 U.S. at 489 ("[A] claim of ineffective assistance

[must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."); *Hill v. Jones*, 81 F.3d 1015, 1030 (11th Cir. 1996) (a procedurally defaulted claim of ineffective assistance of counsel cannot serve as cause to excuse the default of a separate claim).  Harris did not present his allegations of ineffective assistance of trial and appellate counsel relative to the pat down and key seizure claims to the state courts for review.  Harris fails to establish cause and prejudice for his defaults on these claims.  Thus, the claims of ineffective assistance of trial and appellate counsel cannot constitute cause necessary to excuse Harris's procedural defaults on his pat down and key seizure claims.

To the extent that Harris acted *pro se* during the Rule 32 proceedings and presumably suffered from a lack of proficient legal knowledge, these shortcomings provide no basis for relief from the applicable procedural bar as neither an inmate's lack of legal knowledge, his failure to understand legal principles, nor his inability to recognize potential claims for relief at an earlier juncture constitute an extraordinary circumstance sufficient to warrant such relief.  *Harmon v. Barton*, 894 F.2d 1268 (11th Cir. 1990) (ignorance of the law fails to establish cause for a procedural default); *Smith v. Newsome*, 876 F.2d 1461 (11th Cir. 1989); *Spencer v. Kemp*, 781 F.2d 1458, 1462 (11th Cir. 1986); *Barksdale v. Lane*, 957 F.2d 379, 385-386 (7th Cir. 1992) (petitioner's *pro se* status does not constitute adequate grounds for cause); *see also Wakefield v. Railroad Retirement*

*Board*, 131 F.3d 967, 969 (11th Cir. 1997) (ignorance of the law is not a factor which warrants relief from procedural bars); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000), *cert. denied*, 531 U.S. 1194, 121 S.Ct. 1195, 149 L.Ed.2d 110 (2001) ("[I]t is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.' *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999)."); *Kreutzer v. Bowersox,* 231 F.3d 460, 463 (8th Cir.2000), *cert. denied*, 534 U.S. 863, 122 S.Ct. 145, 151 L.Ed.2d 97 (2001) (lack of legal knowledge or legal resources, even in a case involving a *pro se* inmate, does not warrant relief from a procedural bar); *Miller v. Marr,* 141 F.3d 976, 978 (10th Cir. 1998) (relief from procedural bar not justified by fact that petitioner did not understand the law).

Based on the foregoing, the court concludes that Harris has failed to demonstrate cause for his failure to present his procedurally defaulted claims to the state courts in compliance with applicable procedural rules.  Nevertheless, this court may still reach the merits of these claims in order to prevent a fundamental miscarriage of justice

**2.  Fundamental Miscarriage of Justice**.  The miscarriage of justice standard is directly linked to actual innocence.  *Schlup v. Delo*, 513 U.S. 298, 321 (1995).  Actual innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id.* at 315.  This exception applies where a petitioner establishes that "a constitutional

violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schlup v. Delo*, *supra*. "To establish actual innocence, [a habeas petitioner] must demonstrate that ... 'it is more likely than not that no reasonable juror would have convicted him.' *Schlup v. Delo*, 513 U.S. 298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "[T]he *Schlup* standard is demanding and permits review only in the '"extraordinary"' case." *House v. Bell*, 547 U.S. 518, 538, 126 S.Ct. 2064, 2077 (2006). Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of defaulted claims."  547 U.S. at 537, 126 S.Ct. at 2077.  "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency. *See Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518-2519, 120 L.Ed.2d 269 (1992)." *Bousley*, 523 U.S. at 623-624; *Doe v. Menefee*, 391 F.3d 147, 162 (2nd Cir. 2004) ("As *Schlup* makes clear, the issue before [a federal district] court is not legal innocence but factual innocence."). *Schlup* observes that "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.... To be credible, such a claim requires petitioner to support his allegations of constitutional error with ***new reliable evidence*** -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims

of actual innocence are rarely successful." 513 U.S. at 324 (emphasis added).

Harris has failed to make the requisite showing of actual innocence as he has presented no "new reliable evidence" nor do his allegations suggest that any such evidence exists which could satisfy the stringent standard set forth in *Schlup*. Harris' procedurally defaulted claims are therefore foreclosed from federal habeas review.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The petition for habeas corpus relief filed by Timothy Lee Harris be DENIED.

2. This case be DISMISSED with prejudice.

It is further

ORDERED that on or before March 2, 2011 the parties may file objections to the Recommendation. Objections must specifically identify the findings in the Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings in this Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of

plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see*

*Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*,

661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all decisions of the

former Fifth Circuit handed down prior to September 30, 1981).

DONE, this 17th day of March, 2011.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE